UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

In re:

MONTREAL MAINE & ATLANTIC RAILWAY, LTD.

Debtor.

Bk. No. 13-10670
Chapter 11

**CHAPTER 11 TRUSTEE'S MOTION TO TRANSFER PERSONAL INJURY TORT AND WRONGFUL DEATH CLAIMS PURSUANT TO 28 U.S.C. § 157(b)(5)**

Robert J. Keach, the chapter 11 trustee of Montreal Maine & Atlantic Railway, Ltd., hereby moves this Court for an order, pursuant to 28 U.S.C. § 157(b)(5), transferring nineteen civil actions currently pending in the United States District Court for the Northern District of Illinois to this Court. Precisely as envisioned by Congress when it enacted section 157(b)(5), and as detailed below, action by this Court pursuant to that section will bring all of the U.S. – based wrongful death litigation arising from the tragic derailment of one of Montreal Maine & Atlantic Railway, Ltd.'s trains in Lac-Mégantic, Quebec to the district where that company's chapter 11 case is already pending before the Honorable Judge Kornreich so that this Court, or the bankruptcy court on reference, can determine the locus of the trial of such litigation, particularly given that the bankruptcy court and the Canadian court handling a subsidiary's Canadian restructuring proceeding, have already adopted a cross border communications protocol. In support of this motion, the Trustee states as follows:

**JURISDICTION AND STATUTORY BASIS**

1.  On August 7, 2013, Montreal Maine & Atlantic Railway, Ltd. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. This Court has original and exclusive jurisdiction over the Debtor's chapter 11 case. *See* 28 U.S.C. § 1334(a).

As a result of this Court's local rules, the Debtor's chapter 11 case was referred, pursuant to 28 U.S.C. § 157(a), to the United States Bankruptcy Court for the District of Maine (the "Bankruptcy Court"). *See* D. Me. LR 83.6(a).

2. On August 21, 2013, the United States Trustee appointed Robert J. Keach (the "Trustee") as the chapter 11 trustee in the Debtor's case pursuant to 11 U.S.C. § 1163.

3. This motion is brought pursuant to 28 U.S.C. § 157(b)(5), which provides as follows:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). In addition, the Trustee believes that the relief sought by this motion is appropriately granted pursuant to 11 U.S.C. § 105(a). Section 105(a) allows a court to "issue any order . . . that is necessary or appropriate to carry out the provisions of [the United States Bankruptcy Code]." 11 U.S.C. § 105(a).

## FACTUAL BACKGROUND

4. The Debtor and its wholly-owned subsidiary, Montreal Maine & Atlantic Canada Co. ("MMA Canada") operate an integrated, international shortline freight railroad system involving 510 route miles of track located in Maine, Vermont, and Québec

5. On July 6, 2013, one of the Debtor's eastbound trains derailed in Lac-Mégantic, Quebec (the "Derailment"). The Derailment set off several massive explosions, destroyed part of downtown Lac-Mégantic, and is presumed to have killed 47 people.

6. The Derailment precipitated the Debtor's chapter 11 filing, as well as a filing by MMA Canada under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended.

2

7. Beginning on July 22, 2013 and continuing for several days thereafter, the representatives and administrators of the estates of some of the victims commenced civil actions against the Debtor and other co-defendants in the Circuit Court of Cook County, Illinois (the "Circuit Court"). In particular, twelve civil actions were commenced, each involving a single victim of the Derailment as a plaintiff and each containing nearly identical factual allegations and legal conclusions. These twelve cases were filed by two law firms, Meyers & Flowers LLC and The Webster Law Firm.

8. On July 26, 2013, another plaintiff commenced a civil action against the Debtor and other defendants in the Circuit Court. Like the others, this case arose out of the Derailment, and includes the same defendants. This case was filed by two different law firms, Edelman, Combs, Latturner & Goodwin, LLC and Weller, Green, Toups & Terrell, L.L.P.[1]

9. On August 14, 2013, seven additional civil actions were commenced in the Circuit Court. These civil actions were virtually identical to the twelve civil actions described in Paragraph 7 above. Notably, the Debtor was not named as a defendant in any of these seven civil actions. These seven civil actions were also filed by Meyers & Flowers LLC and The Webster Law Firm.

10. Beginning on August 29, 2013, all twenty of these civil actions were removed to the United States District Court for the Northern District of Illinois (the "Illinois District Court"). The removal of the cases was effectuated pursuant to 28 U.S.C. §§ 1331, 1332, 1334(b), 1441, 1446, and 1452. In general, section 1452 governs removal of claims related to bankruptcy cases. *See* 28 U.S.C. § 1452(a).

---

[1] This case was voluntarily dismissed by the plaintiff on September 8, 2013. *See* Custeau v. Montreal, Maine and Atlantic Railway, Ltd., et al., 1:13-cv-06182 (N.D. Ill., Sept. 8, 2013).

3

11. On September 5, 2013, the Illinois District Court issued, *sua sponte*, a Memorandum Opinion and Order in one of the cases. *See* Grimard v. Montreal Maine and Atlantic Railway, Inc., 1:13-cv-06197 (N.D. Ill. September 5, 2013). Although the Court made no findings or conclusions, it noted that, for its current purposes, the Debtor's chapter 11 filing brought "Section[s] 1334(b) and 1452(a) into play. . . ." *See* id. at 3.

12. On September 9, 2013, one of the plaintiffs moved the Illinois District Court for an order remanding her case back to the Circuit Court. *See* Grimard v. Montreal Maine and Atlantic Railway, Ltd., et al., 1:13-cv-06197 (N.D. Ill., Sept. 9, 2013).[2] Also on September 9, each of the plaintiffs in the remaining cases voluntarily dismissed, without prejudice, the Debtor as a defendant.

13. As of September 10, 2013, nineteen of the twenty cases originally commenced in the Circuit Court and later removed to the Illinois District Court remain pending in that court. Those cases (collectively, the "PITWD Cases") are shown on **Exhibit A** attached hereto.

## RELIEF REQUESTED

14. Pursuant to 28 U.S.C. § 157(b)(5) and 11 U.S.C. § 105(a), the Trustee seeks an order transferring the PITWD Cases to this Court.

## BASIS FOR RELIEF

15. As noted above, section 157(b)(5) dictates that "personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose . . . ." 28 U.S.C. § 157(b)(5). Section 157(b)(5) aims to centralize the adjudication of a bankruptcy case, and the plain language of the statute expressly confers authority on this Court to determine the proper venue for trial of the PITWD Cases. *See, e.g.,* Whittingham v. CLC of Laurel, LLC, 2006 WL 2423104, at *1 (S.D.

---

[2] The plaintiff has scheduled the remand motion for hearing on September 12, 2013, three days after it was filed.

4

Miss. Aug. 22, 2006) ("the ultimate venue of the trial in the personal injury case should be determined by the District Court where the bankruptcy case is pending"); Hopkins v. Plant Insulation Co., 342 B.R. 703, 708 (D. Del. 2006) (district court where bankruptcy case is pending has sole authority to determine venue for personal injury and wrongful death claims). As noted in a leading bankruptcy treatise:

> Section 157(b)(5) provides that venue of the PITWD trial is to be determined by the district court in which the title 11 case is pending. This unusual, perhaps unique, provision empowers a court other than that in which the litigation is pending to decide where the trial is to take place. The court in which the title 11 case is pending has the options of trying the case itself or directing that the trial occur in the district court for the district where the claim arose.

1-3 Collier on Bankruptcy ¶ 3.06[3] (16th ed. 2010) (emphasis added).

16. Courts routinely transfer personal injury tort and wrongful death cases under section 157(b)(5) when one of the defendants is a debtor in a bankruptcy case. *See* Garza v. Hoop Retail Stores, LLC, 2012 WL 1149293 at *1 (D. Del. 2012); Whittingham, 2006 WL 2423104 at *1; Dow Corning Corp., 86 F.3d 482 (6th Cir. 1996); In re Pan Am Corp., 16 F.3d 513 (2d. Cir. 1994). The same result should occur here.

17. After the PITWD Cases were removed to the Illinois District Court, that court obtained subject matter jurisdiction over the cases under 28 U.S.C. § 1334. Section 1334(b) provides district courts with subject matter jurisdiction in bankruptcy cases as follows:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b) (emphasis added). "Related to" jurisdiction is broadly defined to include any civil action whose outcome "could conceivably have any effect on the estate being administered in bankruptcy." Celotex Corp. v. Edwards, 514 U.S. 300, 306 (1995). An action is "related to

5

bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." Id. The action "need not be against the debtor or the debtor's property to invoke 'related to' jurisdiction under Section 1334(b)[.]" Hopkins, 342 B.R. at 710; *see also* Celotex Corp., 514 U.S. at 307, n.5 ("Proceedings 'related to' the bankruptcy include . . . suits between third parties which have an effect on the bankruptcy estate."); In re Boston Regional Medical Center, Inc., 410 F.3d 100, 105 (1st Cir. 2005) ("related to" jurisdiction enables bankruptcy courts "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates."); In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991) (related proceedings must "potentially have some effect on the bankruptcy estate[.]"). The Illinois District Court unquestionably has "related to" jurisdiction over all of the PITWD Cases. The plaintiffs' dismissal of their claims against the Debtor, after removal to the federal court, does not alter the jurisdictional analysis. *See, e.g.,* In re Jefferson County, Alabama, 491 B.R. 277 (Bankr. N.D. Ala. 2013 (where two insurance companies filed virtually identical actions but one action did not directly name the debtor, court held that stay applied to both actions because it was apparent that the debtor was a party in interest in both actions, claims against the debtor and non-debtor defendant were inextricably interwoven, and non-debtor defendant asserted third-party indemnification claims against debtor that could make debtor responsible for any recovery).

18.     The conclusion that the PITWD Cases are "related to" the chapter 11 case is buttressed by the claimants' conduct in the chapter 11 case. As mentioned above, all of the PITWD Cases arise out of the Derailment, and all of the claims arise out of the same common nucleus of operative facts. The plaintiffs have moved the Bankruptcy Court for an order appointing a creditors' committee in the chapter 11 case [Bankruptcy Court Docket No. 76] (the "Committee Motion"). By filing the Committee Motion, the plaintiffs acknowledge their intent to

6

involve themselves in the bankruptcy case and submit to this Court's jurisdiction. The plaintiffs go so far as to assert that the Debtor and other non-debtor defendants "will benefit by utilizing the orderly and efficient process, and the certainty of closure, that a consensual Chapter 11 plan can provide in the mass tort context, as a far superior alternative to the risk of being subject to uncertainty, duplication of effort, inconsistent results, indefinite duration and ever-burgeoning expense in the tort system." Committee Motion, ¶ 6. This coincides with the purpose of centralizing adjudication of claims, which is the driving force behind 28 U.S.C. § 157(b)(5).

19. Despite dismissing the Debtor as a defendant, the PITWD Cases will undoubtedly alter the Debtor's liabilities and impact the handling and administration of the estate. The plaintiffs even concede as much since the Committee Motion outlines the several ways in which the PITWD Cases could conceivably have an effect on the estate. In the Committee Motion, the plaintiffs support their need for a committee because the "[w]rongful death and personal injury claimants will be by far the largest constituency in [the bankruptcy case]" and "[g]iven the horrific circumstances of the Disaster and the Debtor's role in it, wrongful death verdicts in the hundreds of millions of dollars can be expected." Id. at ¶ 2. The plaintiffs also liken themselves to other creditors in the Bankruptcy Case and contend that "[c]onfirmation of a Chapter 11 plan will require support from the wrongful death and personal injury claimants" and the plaintiffs will provide "a negotiating partner in connection with the Chapter 11 plan and other aspects of [the bankruptcy case] – thus enhancing the likelihood of a successful outcome. Id. at ¶ 5. The plaintiffs even allege that the "wrongful death and personal injury claimants are almost certainly covered by insurance" and they have "claims against wrongdoers other than the Debtor, which may be affected by orders entered or a plan confirmed in [the bankruptcy case]. Id. at ¶ 8.

20. Based on the foregoing, clearly the PITWD Cases, with or without MMA as a named defendant, will have an effect on the chapter 11 case. Because a train operated by the

7

Debtor is at the center of the PITWD Cases, the Debtor will be involved in the suits, whether or not the plaintiffs have, at the moment, asserted direct claims against the Debtor. The costs associated with the discovery process alone will exhaust valuable resources of the Debtor's estate, and discovery and motion practice would be a significant burden on the Debtor while the Trustee attempts to maximize the value of the assets for the benefit of all creditors. Further, the Trustee anticipates that the non-debtor defendants will assert cross-claims against the Debtor that will likely include contribution and indemnification. Such cross-claims will certainly have an impact on the Debtor's liabilities. *See* In re Dow Corning Corp., 86 F.3d at 494 (6th Cir. 1996) ("potential for [debtor] being held liable to the non-debtors for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy."); *see also* In re Jefferson County, Alabama, 491 B.R. at 290 (automatic stay applied to action against non-debtor defendant because of potential implication of debtor's indemnification and contribution obligations).

21.     For reasons outlined above, the PITWD Cases should be transferred to this Court to ultimately decide the proper venue for trial.

## NOTICE

22.     Notice of this motion was served on the following parties on the date and in the manner set forth in the certificate of service: (1) the United States Trustee; (2) the Debtor's counsel; (3) the non-insider holders of the twenty (20) largest unsecured claims against the Debtor or, if applicable, the lawyers representing such holders; (4) applicable federal and state taxing authorities; (5) the holders of secured claims against the Debtor, or if applicable, the lawyers representing such holders; (6) others who have, as of the date of this Motion, entered an appearance and requested service of papers in the Case; (7) counsel for the plaintiffs in the PITWD Cases; and (8) counsel for the co-defendants in the PITWD Cases.

WHEREFORE, the Trustee requests that the Court enter an Order: (1) transferring the PITWD Cases to this Court; (2) setting a briefing schedule to determine the appropriate venue for trial of the PITWD Cases after they have been transferred from the Illinois District Court to this Court; and (3) granting such other further relief as may be appropriate.

Dated:  September 11, 2013        ROBERT J. KEACH,
CHAPTER 11 TRUSTEE OF MAINE
MONTREAL & ATLANTIC RAILWAY, LTD.

By his attorneys:

/s/ *Michael A. Fagone*
Michael A. Fagone, Esq.
D. Sam Anderson, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street
P.O. Box 9729
Portland, ME 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
E-mail: mfagone@bernsteinshur.com
       sanderson@bernsteinshur.com