UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|   |   |   |
|---|---|---|
| IN RE: MONTREAL MAINE AND ATLANTIC RAILWAY, LTD., | ) ) ) ) ) ) | Civil no. 1:13-MC-00184-NT |
| Debtor , | ) |   |

**ORDER**

Before the Court is the Claimants'[1] motion for reconsideration or to certify reviewability of the Court's March 21, 2014 order granting motions to transfer eighteen wrongful death suits from Illinois to this Court (ECF No. 226). For the following reasons, the motion is **DENIED**.

The heart of the Claimants' motion for reconsideration is their assertion that the Court's Order does not address how either a right to indemnification or a shared insurance policy could have conceivably impacted the Railway's bankruptcy estate, since "the Railway's Estate . . . is unable to pay its own administrative expenses." Mot. to Reconsider 2, 6, n. 6 & 10. The Court takes this opportunity to clarify any confusion.

The evidence presented to the Court indicates that the Railway's Estate may have assets available for distribution to parties other than secured creditors. In particular, the Railway has made a claim against Western Petroleum. *See*, Comp. ¶

---

[1] The Claimants take the position that sixteen of the Illinois cases were voluntarily dismissed on March 24, 2014. The Court notes, however, that it took jurisdiction of the Illinois cases on March 21, 2014, the date it entered the order to transfer the cases.

1

104 in *Keach v. World Fuel Svcs. Corp. et al*, Bk. No. 13-10670 (Bankr. D. Me 2014). The Trustee represented to the Court that the claim may yield hundreds of millions of dollars for the Estate.

The Court disagrees that this lawsuit attempts to assert the Claimants' rights. The Complaint states the Railway's own claims against the defendants, and it alleges damages based both on the Railway's own losses and on the Railway's liability to those harmed in the disaster. Although the size of the Railway's claim is in part dependent upon what claims are filed against it, the Claimants have not pointed to any authority suggesting that the Railway is precluded from asserting as part of its damages its exposure on claims asserted against it.[2]

Here the Railway claims that Western Petroleum withheld material information from it about the volatility of the oil the Railway was contracted to transport. This states a viable claim against Western Petroleum, one that may generate assets for distribution. Because the Court cannot say that the estate is administratively insolvent as the Claimants assert, claims against CIT, which has

---

[2] *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972), cited by the Claimants, is distinguishable. In *Caplin*, the Supreme Court barred a bankruptcy trustee from asserting the rights of a debtor's bondholders against a bank that may have acted in bad faith in supervising the conditions of the debtor's bond. In denying the trustee the right to sue on behalf of the bondholders, the Supreme Court noted that,

> nowhere does [the Trustee] argue that [the debtor] could make any claim against [the bank]. . . . Assuming that [the trustee's] allegations of misconduct on the part of the [bank] are true, the [trustee] has at most described a situation where [the debtor] and [the bank] were in pari delicto.

*Caplin*, 406 U.S. at 429-30. The debtor – fully aware of its own defalcation – had no right to sue the bank for failing to ensure the debtor's compliance with its bond requirements, and therefore the trustee had no basis for pursuing the bank.

an unqualified right of indemnification from the Railway, may conceivably have some effect on the distribution of the estate's as-yet-unquantified assets.

The reasons for finding bankruptcy-relatedness are fundamentally different where shared insurance is concerned. Shared insurance creates bankruptcy-relatedness because insurance "is a valuable property of the debtor" and actions against co-insureds—whether they are "independently liable" or not—threaten to diminish the coverage available under the policy. *Robins*, 788 F.2d at 1001.[3] As the *Quigley* court noted in finding bankruptcy-relatedness on the basis of shared insurance:

> One of the central purposes—perhaps *the* central purpose—of extending bankruptcy jurisdiction to actions against certain third parties, as well as suits against debtors themselves, is to "protect[ ] the assets of the estate" so as to ensure a fair distribution of those assets at a later point in time. *In re Zarnel,* 619 F.3d 156, 171 (2d Cir.2010). . . . A suit against a third party alleging liability not derivative of the debtor's conduct but that nevertheless poses the specter of direct impact on the *res* of the bankrupt estate may just as surely impair the bankruptcy court's ability to make a fair distribution of the bankrupt's assets as a third-party suit alleging derivative liability.

*In re Quigley Co., Inc.*, 676 F.3d 45, 57-58 (2d Cir. 2012) *cert. denied,* 133 S. Ct. 2849 (U.S. 2013). If allowed to be paid outside of bankruptcy, the proceeds of the XL Policy will be distributed to the first claimants to liquidate their claims against CIT

---

[3] The Claimants claim that:

*Robins* dictates that bankruptcy jurisdiction based on shared insurance should not be extended over third party cases, such as the Illinois Actions, where the non-debtor is "independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty." [*A.H. Robins Co. Inc. v. Piccinin*, 788 F.2d 994, 999-1000 (4th Cir. 1986).]

Mot. for Reconsideration 6. But *Robins* does not say this about *shared insurance*, it says this about third parties who claim an *indemnity obligation* of the debtor.

or the Rail World Defendants, leaving further claimants without any recovery once the policy is exhausted. This was a central concern of both *Quigley* and *Robins*, and it is the reason the Court has found bankruptcy-relatedness jurisdiction over claims against defendants who are co-insureds under the XL Policy.

Finally, the Court notes that the Claimants' discussion of the "special circumstances" necessary to "extend the stay" against a non-debtor defendant appears beside the point. The question before the Court was not whether the automatic stay under 11 U.S.C. § 362(a) should be extended to the Non-Debtor Defendants, but rather whether it should take jurisdiction of wrongful death suits against the Non-Debtor Defendants.

The Claimants have not pointed to any law that causes the Court to feel that certification under 28 U.S.C. § 1292(b) is warranted. For the foregoing reasons, the Claimants' motion is **DENIED**.

SO ORDERED.

                                              /s/ Nancy Torresen
                                              United States District Judge

Dated this 18th day of April, 2014.